Esposito, Admrx., Appellant, *v.* Philadelphia
Transportation Company.

Argued November 17, 1949. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Joseph P. Breslin,* with him *Vincent P. Desmond*
and *Thomas Boylan,* for appellant.

*Harold Scott Baile,* with him *Jay B. Leopold* and
*Bernard J. O'Connell,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, January 3, 1950 :

Helen A. Esposito, widow and administratrix of Domenick Esposito, deceased, instituted this action for damages occasioned by the death of her husband, who was killed when an automobile driven by him collided with a street car of Philadelphia Transportation Company. The trial judge granted the request of Philadelphia Transportation Company for binding instructions and directed a verdict in its favor. Mrs. Esposito moved for a new trial which was refused, and she has appealed.

The time of the accident was September 21, 1945, at about 6 :30 P.M. daylight saving time, and the place was the same as that of the accident in *Leaman Transportation Corporation v. Philadelphia Transportation Company*, 358 Pa. 625, 57 A. 2d 889, on the Industrial Highway running from Chester to Philadelphia, in Tinicum Township, Delaware County, where it is crossed by the double trolley tracks of appellee. The highway runs in an east-west direction, consists of two paved strips, each 24 feet in width, separated by a two-foot wide divisor, and is crossed by appellee's trolley tracks, which run southwest-northeast at a thirty degree angle. To warn westbound (Philadelphia to Chester) traffic, appellee maintains signal lights, consisting of one amber and two red blinker type lights, which overhang the highway, at a point 44 feet east of the eastern rail of the northbound track, from an upright to which are also affixed two warning signs, with letters made of reflector glass, reading "2 TRACKS" and "STOP ON RED SIGNALS". The amber light, visible only from the direction of oncoming traffic, is lighted at all times, except when a trolley car is approaching or occupying the crossing. On the approach of a trolley, when it reaches a point 143 feet south of the highway, an automatic electric "tripper" device attached to the tracks turns off the amber light and activates the red blinker lights, which are visible from both directions, causing

them to flash or blink alternately until the trolley car completely passes over the highway. On the opposite side of the tracks, 47 feet from the west rail of the southbound tracks, there is a similar device to warn eastbound (Chester to Philadelphia) traffic.

Esposito was driving his automobile from Philadelphia toward Chester at the time, traveling on the northerly side of the highway, and appellee's trolley car was traveling from Chester toward Philadelphia, on the easterly or northbound tracks. It was daylight and the weather was clear and dry. Appellant's sole witness as to the manner of occurrence of the accident was one Furillo, who had boarded the trolley in Chester and was riding near the rear of the car on the right-hand side. He testified that the trolley car was being operated at a speed of 35 to 40 miles per hour as it approached the highway, that when it reached the south edge of the highway he observed Esposito's automobile at the Reading Railroad Company's tracks, which also cross the highway a distance of 166 feet east of appellee's tracks, and that the automobile was approaching the crossing at a speed of 40 to 50 miles per hour. The automobile continued past the warning signs and the flashing red lights, without any abatement of its speed or attempt to turn to the right or left, and collided with the left front corner of the trolley car, "right on the third lane", when it was approximately three-quarters of the way across the highway. The automobile caromed off the trolley car, breaking off a highway post, and came to rest against a steel telegraph pole approximately 90 feet away. The street car came to a stop just clear of the north side of the highway. Furillo testified that the brakes of the trolley were not applied and that an examination made by him following the accident revealed that there was no sand on the tracks and that they were not scorched. Appellant testified that her husband had driven over the crossing twice daily for a

period of three months prior to the day of the accident, and he was therefore entirely familiar with it and the conditions that existed.

In *Leaman Transportation Corporation v. Philadelphia Transportation Company,* supra, as appellant's Chester to Philadelphia bound truck was driven onto the southbound track of the same crossing, it was struck by appellee's Philadelphia to Chester bound trolley. The evidence established that the trolley car was traveling at a speed of 40 miles per hour. It was dark and snowing slightly, and there was testimony that the red warning lights did not begin to flash or blink until the truck was on the tracks, by which time the signal was behind the driver. Nevertheless, this Court held the presumption of due care on the part of the driver, who was killed, was overcome by the physical facts and circumstances, and there could be no recovery as a matter of law. The opinion states (pp. 632, 633) : "This is plainly a case where the 'person who has entered upon [the] railway track [was] struck so instantaneously as to rebut the presumption that he performed his duty to look and listen, no other inference being possible from the evidence than that he failed to do so': see Ehrhart v. York Rys. Co., 308 Pa. 566, 570-571, 162 A. 810. On the other hand, if he did actually look, then it at once becomes undeniably apparent, in the light of the surrounding circumstances, that he chose to test an obvious danger and must therefore be held to have assumed the risk of his lack of proper care: see Moses v. Northwestern Pennsylvania Railway Company, 258 Pa. 537, 540, 102 A. 166." In the present case, appellant concedes that the facts and circumstances in evidence convict her husband of contributory negligence as a matter of law, but she seeks to avoid the effect of the decision in the Leaman case by contending that there is evidence in this case, not present in that case, to justify a finding of reckless or wanton misconduct, and therefore contribu-

tory negligence would not be a defense: *Kasanovich v. George,* 348 Pa. 199, 34 A. 2d 523. The evidence relied upon to warrant such inference is testimony that appellee's motorman was reading a newspaper while traveling the distance of about a mile from the last previous stop to the Industrial Highway and did not put away the newspaper or cut off the power until just before entering the highway; that he ignored his own automatic signal control, located along the tracks 44 feet south of the south edge of the highway, which did not turn from red to amber until the front of the trolley was two feet past it; that upon entering the highway he turned on the power and proceeded across it, at an increasing speed; and that when the trolley car reached the midpoint of the highway, he jumped away from the controls, toward the rear of the car, without applying the brakes. Appellee concedes that each of these "other factors" would be "merely evidence of negligence when considered by itself", but contends that "considered together they amount to wanton misconduct."

The appeal is without merit. As recognized in *Kasanovich v. George,* supra, p. 203: "It must be understood, of course, that wanton misconduct is something different from negligence however gross,—different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor. Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." See also *Fitsko v. Gaughenbaugh,* 363 Pa. 132, 69 A. 2d 76; Restatement, Torts, section 500. Bearing in mind this characterization of wanton misconduct, it is quite clear that the court below did not err in its decision that "The question of negligence of the motorman might have been one of fact to be sub-

mitted to the jury, but the evidence was not sufficient to establish any wantonness on the part of the motorman." Having the right to a clear track, he may properly have assumed, under the circumstances, that Esposito would obey the warning signals and bring his automobile to a stop in time to avoid the danger: *Piepke v. Philadelphia & Reading Railway Company*, 242 Pa. 321, 89 A. 124; *Elliott v. Philadelphia Transportation Co.*, 356 Pa. 643, 53 A. 2d 81.

The testimony of appellant's witness was contradicted by that of the motorman and three other passengers. Their testimony was that the motorman was at no time reading a newspaper; that the trolley car slowed down as it approached the highway and proceeded across it at a slow speed; and that as the trolley reached the center of the highway, when it became apparent that the automobile could not be brought to a stop and that a collision was imminent, the motorman threw the emergency stop switch, locking the wheels and applying sand to the track, and jumped back into the car in order to save himself. This testimony has been disregarded, however, and the facts have been taken as the jury might have found them.

On behalf of appellee, it is contended that Esposito's conduct in driving his automobile past the warning signs and lights, into the path of the oncoming trolley, in broad daylight, at a speed of 40 to 50 miles per hour, shows that he exposed himself recklessly and unnecessarily to an obvious danger, and therefore, even if the circumstances warranted an inference of wanton misconduct on the part of the motorman, his own wanton misconduct would bar a recovery as a matter of law: *Elliott v. Philadelphia Transportation Company*, supra. Since a case of wanton misconduct on the part of the motorman was not made out, it becomes immaterial whether deceased's action amounted to recklessness or mere negligence. In either case his own misconduct affords a complete bar to a recovery by the appellant.

Judgment affirmed.