Chadwick, Appellant, *v.* Popadick.

512

Argued October 4, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Joseph J. Malizia,* for appellants.

*John D. Gresimer,* for appellees.

Opinion by MR. JUSTICE MUSMANNO, November 18, 1957:

On August 6, 1954, Chadwick, Popadick, Simones, and Saffer, drivers of their respective cars A, B, C and D, were moving Indian file from Sinnamohoning to Emporium over Highway Route No. 120 at a rate of speed which could alarm nobody. At a point about one mile south of Sterling Run, Popadick, driver of automobile B, pulled out of his position No. 2, increased his speed from 40 to 50 miles per hour, and moved to position No. 1 in the procession. He had travelled about 150 feet in this new course when he suddenly stopped, not because of any emergency of the road or lack of fuel, but because he wanted to look at a couple of deer grazing in a field adjoining the road.

Chadwick in the new position No. 2, not being forewarned of Popadick's deer-gazing impulse, threw on his brakes but before he could stop, Simones who was following him, and who apparently was on a wool gathering expedition of his own, crashed into his (Chadwick's) rear, and Chadwick crashed into Popadick's rear. Chadwick's car went over an embankment and various injuries were inflicted not necessary to relate here.

Chadwick brought suit against Popadick and Simones. Grimone, who was a passenger in Chadwick's car, brought suit against Chadwick, Popadick, and Simones.

Simones, who collided with Chadwick's rear, admitted his negligence and settled with Chadwick and Grimone, but he was continued as a defendant so that liability between him and Popadick, if any, could be determined. Popadick denied all liability and went to trial. The Trial Court found as a matter of law that Chadwick and Grimone had failed to prove a prima

facie case of negligence against Popadick and directed a verdict in favor of Popadick.

The learned Trial Court erred. Whether Popadick was negligent under the circumstances was a question of fact for the jury.

The right of a motorist to enjoy the beauties of nature (fauna and flora) does not warrant his stopping his automobile in the midst of traffic to satisfy his artistic and poetic proclivities. Popadick knew that he was a link in a four-link traffic chain. So long as he remained an integral part of that travelling unit, he knew or should know that any unusual action on his part would affect the rest of the chain.

The lower Court, in directing a verdict in favor of Popadick, said that Popadick had the right to "stop momentarily for the reason and in the manner in which he stopped on this occasion if he gave a proper signal of his intention to stop, which he did."

But whatever signal Popadick gave, (and we will discuss the signal later), could not have been seen by the cars in the new positions of 2 and 3, so that when Chadwick had to come to an immediate stop, it was inevitable that car No. 3 would have no warning to stop and, as in fact happened, it would have to crash into car No. 2.*  Moreover, the stop signal which Popadick exhibited was only the electric stop light which goes on with the act of braking. A carpenter accused of throwing a plank from a roof top into the street may not argue that he met his duty of due care because he yelled "Look Out!" as the plank struck the heads of pedestrians below.

Popadick knew when he went to the head of the line that Chadwick would be in his wake. From the moment he passed Chadwick until the moment he

* (Car No. 4 did not actually participate in the collision).

stopped, only two seconds passed. He knew, or should have known, that in the event of his sudden stoppage, links 2 and 3 of the chain, of which he was a part, would be affected. A motorist who passes another car on the highway and stops before allowing a sufficient marginal distance of safety to form between him and the car following is guilty of negligence. What that intervening distance should be is a question for the jury.

The driver of the leading car in a procession of 3 or 4 cars is charged with the responsibility of driving in a manner which will avoid a telescopic crash in the event he should suddenly stop. Popadick could have stopped to admire the deer without creating a situation which would cause the succeeding cars to crash into or climb the cars ahead. All he had to do was to drive his car off the macadam on to the berm which here was wide enough to accommodate his vehicle, and there feast his eyes on nature's pulchritude.

The learned Trial Court was of the impression that Popadick could not be held guilty of negligence because Chadwick would not have hit Popadick if Simones had not struck Chadwick. But Simones would not have collided with Chadwick and Chadwick would not have bumped into Popadick if Popadick had not lit the fuse of the three-way firecracker. Syllabus 2 in the case of *Jeloszewski v. Sloan,* 375 Pa. 360, well describes the principle of law involved in an accident of this character: "Where an original tortfeasor by his active negligence creates a dangerous condition and thereafter a second intervening negligent actor does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tortfeasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties."

If Popadick had not of his own active negligence created the original dangerous condition, Simones' action in failing to stop his car in time would not have inflicted the serious injuries which resulted to the occupants of Chadwick's car when Chadwick came into violent collision with Popadick and went over an embankment.

The judgments of the Court below are reversed with a venire facias de novo.

