**Anita Hardin DONEGAN, Appellant,**

v.

**Paul Edward DENNEY et al., Appellees.**

Court of Appeals of Kentucky.

June 19, 1970.

As Modified on Denial of Rehearings Oct. 9, 1970.

Walter L. Cato, Jr., Edwin I. Baer, Louisville, for appellant.

William S. Bowman, Stanley V. Benovitz, William G. Lehnig, Richard M. Trautwein, Marshall B. Woodson, Jr., Robert L. Durning, Jr., Louisville, for appellees.

DAVIS, Commissioner.

The captioned proceeding has been consolidated with four separate appeals respectively styled and numbered: Thomas Garland Tucker v. Paul Edward Denney et al. (V–120–68); Murrell Alvin Ramsey v. Paul Edward Denney et al. (V–121–68); Joseph Francis Perrone v. Paul Edward Denney et al. (V–122–68); and Ralph Isaac Wright et al. v. Anita Hardin Donegan et al. (V–131–68). All of the appeals grow out of a multiple-vehicle accident which occurred on Watterson Expressway in Louisville about 7:20 a.m. on November 1, 1966, and will be disposed of in this opinion. The weather was "hazy." There had been rain shortly before the accident; some of the witnesses said it was "misting," but others said it was raining at the time of the accident.

It will be necessary to state the confusing factual background before setting out the results in the trial court and the numerous contentions presented on appeal.

A truck owned by and operated for Pepsi Cola Louisville Bottlers (Pepsi) undertook to merge with eastbound traffic on Watterson Expressway at the Phillips Lane entrance. As it did so ten cases of soft drinks fell from the truck onto the highway. The cases fell because a Pepsi employee had left a pallet hook in the left front bay or pocket of the truck. When the truck was loaded, the loading employee did not observe the mislaid hook, else it should have been removed and the cases would have been secure. When the cases fell off the Pepsi truck, the driver stopped the truck in the merging lane, alighted, and tried to warn oncoming traffic.

The car immediately behind the Pepsi truck (driven by Smothers) ran through the scattered broken glass, all four of its tires blowing out. No other car collided with the Smothers car, but there was a three-vehicle collision behind (west of) Smothers between vehicles driven by New, Hibbs, and R. C. Cola's employee. None of the participants in those events is a litigant here except Pepsi.

Other traffic proceeding eastwardly approached the congestion caused by the incidents just mentioned. At a point slightly past the crest of the Crittenden Drive overpass, and at a point estimated by witnesses as nearly a thousand feet from the New-Hibbs-R. C. Cola truck melee, a car operated by Earl Rawls came to a stop in the "fast" or inside eastbound lane of the Watterson Expressway. Rawls testified that he observed a long line of cars ahead of him flashing brake lights and stopped or stopping. He said two cars in front of him "bumped," but with no apparent damage. As he stopped, Rawls flashed his brake light and gave a warning arm signal.

Five cars following Rawls were involved in collisions. We shall identify them by the names of the drivers and by using the same numbers employed for identification at the trial. The car immediately behind Rawls was operated by Anita Hardin Donegan (Car. No. 5). Next in line was the car operated by Murrell A. Ramsey (Car No. 4). Behind Ramsey was Joseph F. Perrone (Car No. 3), whose car was followed by Car No. 2, driven by Paul E. Denney. The final car in the procession was operated by Thomas G. Tucker and assigned Car No. 1 for identification by the witnesses.

Car No. 5 (Donegan) stopped approximately four car lengths (some 60–80 feet) behind the Rawls car. Very shortly Car No. 4 (Ramsey) collided with the rear of Car No. 5 (Donegan). Car No. 3 collided with the rear of Car No. 4. Car No. 2 (Denney) ran into the rear of Car No. 3 and in turn was struck from the rear by Car No. 1 (Tucker).

It was the contention of Donegan, in Car No. 5, that her car was initially struck by Car No. 4 (Ramsey) before Car No. 4 was ever brought to a stop and that Car No. 4 was again propelled into Car No. 5 when Car No. 3 struck Car No. 4 before

stopping. It is difficult to discern whether recurrent impacts occurred affecting Cars 4 and 5 as Car No. 2 hit Car No. 3 and was hit by Car No. 1.

There were suits and countersuits, and Pepsi was impleaded as a third-party defendant by three of the litigants who sought property damages and contribution or indemnity as to any recovery which might be adjudged against them.

At the conclusion of all the evidence, the trial court granted peremptory instructions for Pepsi on all claims against it. The court also gave peremptory instructions in favor of Ramsey (Car No. 4) and Perrone (Car No. 3) on the cross-claims of Donegan (Car No. 5) against them.

The court directed a verdict in favor of Donegan (Car No. 5) against Denney (Car No. 2) and Tucker (Car No. 1), submitting the issue of damages to the jury which awarded Donegan $11,000 against each of them.

The jury awarded Denney (Car No. 2) $200 on his property damage claim against Tucker (Car No. 1). That finding is not challenged on appeal, nor are the jury's awards of $350 each against Denney (Car No. 2) and Tucker (Car No. 1) in favor of Ramsey (Car No. 4).

Ralph Isaac Wright was a passenger in Car No. 2 (Denney). The jury's finding on Wright's claim for personal injuries against Tucker (Car No. 1) was in these words and figures: "We, the jury, find for plaintiff, Ralph Isaac Wright, against the defendant, Thomas Garland Tucker, and award him damages in the sum of $0.-00."

Donegan (Car No. 5) appeals as to that portion of the judgment absolving Ramsey (Car No. 4) and Perrone (Car No. 3) from liability on her claim. In short, her claim is that a jury issue was created respecting the negligence vel non of Ramsey and Perrone, so that the trial court erred in directing verdicts in their favor against Donegan.

There was some evidence, albeit somewhat negative in character, in support of the proposition that Ramsey (Car No. 4) collided with Donegan (Car No. 5) before Ramsey stopped. Likewise, there was similar evidence tending to support the contention that Perrone (Car No. 3) collided with Car No. 4, again propelling that car against Car No. 5 before Perrone came to a stop. Evidence for Ramsey and Perrone was that each of them stopped without colliding with the car ahead, but that their cars were then struck from the rear by Denney (Car No. 2) and Tucker (Car No. 1).

Donegan cites Ellis v. McCubbins, 312 Ky. 837, 229 S.W.2d 992, with particular reference to the following sentence in that opinion:

"It is true McCubbins stopped without striking the car in front of him; nevertheless, it was his duty to travel a reasonably safe distance behind the preceding car since that would have enabled him to come to a more gradual stop and have given the Ellis car behind him time to stop without hitting McCubbins." Id. 229 S.W.2d at page 995.

For Ramsey and Perrone it is noted that Ellis v. McCubbins, just cited, dealt with a multiple-car accident at the intersection of Third Street and Eastern Parkway, where traffic controls were present. Here the accident occurred on a limited-access expressway having *minimum* speed limit of 35 m. p. h. and maximum limit of 50 m. p. h. No intersectional stop, or any stop at all, was within the usual or expected flow of the traffic. More apposite, say Ramsey and Perrone, is the language found in Propane Transport Co. v. Edelen, Ky., 400 S.W.2d 697, in which it was observed:

"Traffic conditions were not so congested (as they often may be on urban expressways) as to require close following." Id. 400 S.W.2d at page 699.

The roadway involved in Propane Transport was not an urban expressway, so the

observation may be regarded as obiter dictum; yet it recited a known fact of modern traffic.

■ However, conceding that traffic conditions along an urban expressway admit of somewhat closer trailing than might be prudent in other circumstances, the fact remains that drivers on such thoroughfares are pointedly charged with the knowledge that other motorists are closely trailing them, so that they must exercise appropriate care when suddenly stopping to afford warning to the trailing drivers. Within this framework, we think the jury could reasonably have inferred that the drivers of Cars No. 4 and No. 3 (Ramsey and Perrone) were guilty of causal negligence, no matter if the jury believed that each of them had actually stopped before being struck from the rear themselves. There were sufficient facts related in evidence to create jury issues as to whether Ramsey and Perrone exercised the degree of care required of them in the particular circumstances at bar; hence, the court erred in granting directed verdicts in their favor on the cross-claim of Donegan.

Tucker (Car No. 1) has appealed, contending that (1) the court erred in directing a verdict for Pepsi; (2) the court erred in directing verdicts for Ramsey (Car No. 4) and Perrone (Car No. 3); and (3) the court erred in directing a verdict for Donegan (Car No. 5). Tucker also argues, in response to the cross-appeal of Ralph Isaac Wright, that the court correctly declined to afford Wright relief as respects the verdict awarding him the sum of "$0.00."

This brings us to the necessity of reviewing the entire chain of accidents in an effort to determine whether the trial court properly disposed of issues of causation and negligence.

The trial court expressed the view, in absolving Pepsi:

"I think that the Pepsi Cola negligence had spent itself. A good many vehicles had come to a stop, there were cars lined up, maybe a couple car collision in between. * * * It is the Court's opinion that [Pepsi's] negligence had spent itself and that Pepsi Cola cannot be kept in."

■ Pepsi maintains that the ruling of the trial court was not that Pepsi was free of negligence, but that there was no showing that any act or omission of Pepsi constituted a legal, proximate cause of the series of collisions which occurred some 800 to 1,000 feet west of the Pepsi "spill" of bottles. In support of that contention, Pepsi cites Anderson v. Jones, 66 Ill.App. 2d 407, 213 N.E.2d 627 (1966), in which driver Jones lost control of his car on Interstate Highway 74, crossed the median, and collided with two oncoming cars; that collision caused one of the cars struck by Jones to cross the median, blocking the westbound lanes of the highway. Several cars stopped because of the obstruction in the westbound lanes. One of the stopped cars was struck from behind by defendant Zehr; its owner sued both Zehr and Jones whose original erratic driving had set up the entire hazard. In absolving Jones, the Illinois court observed:

"It is quite clear that the immediate cause of plaintiffs' injuries and damages was the force set in motion through the negligent act of Zehr. The force set in motion by Jones had spent itself. It was in repose. It was quiescent. The incident was at an end. Plaintiffs were home free save for the wrongful act of Zehr." Id. 213 N.E.2d at page 629.

Other authorities relied on by Pepsi, having like import, include Zickrick v. Cooke, 197 Or. 87, 252 P.2d 186; Illinois Central Railroad v. Vincent, Ky., 412 S.W.2d 874; Com., Dept. of Highways v. Graham, Ky., 410 S.W.2d 619; and Wilborn v. Sneed, Ky., 415 S.W.2d 858. We conclude that the trial court correctly adjudged that Pepsi's misconduct was too remote and superseded by too many intervening factors to afford basis for liability against Pepsi

for the five-car collision involved on appeal. Restatement of the Law, Torts 2d, Section 440, page 465, provides:

"A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

Although "foreseeability of harm" is an often-used term in determining whether a superseding cause has occurred, the text writers generally agree that "hindsight," or an "after-the-event" scrutiny, must be resorted to in deciding whether the act of a third person or other force is legally a superseding cause. Restatement of the Law, Torts 2d, Section 443, Comment b, page 473. Viewed in that light, it would appear abnormal to suppose that Pepsi's original negligence was not superseded in light of so many instances in which motorists had safely stopped between the site of Pepsi's negligence and the locale of the five-car collision at bar.

See also Prosser, Law of Torts, 3d Ed., Section 51, page 311, at which the author notes, with reference to intervening causes:

"But here, as before, this overworked and undefined word [foreseeable] covers a multitude of sins. It is at least clear that in many cases recovery has been allowed where the intervening cause was not one which any reasonable actor could be expected to anticipate or have in mind, but it is regarded as 'normal' to the situation which he has created. In other words, although the theory of the cases is one of foreseeability, the practical application has always involved a considerable element of hindsight."

We have already noted that we believe the trial court erred in directing verdicts absolving Ramsey (Car No. 4) and Perrone (Car No. 3) from all claims against them. To that extent, the appeal of Tucker (Car No. 1) has merit.

■ As respects Tucker's claim that it was error to direct a verdict for Donegan (Car No. 5), we conclude that there was no substantive evidence or circumstance fixing any causative negligence upon Donegan. Admittedly, she stopped without incident when the Rawls car stopped ahead of her. Ramsey, who was immediately following Donegan, testified that he stopped without striking Donegan (although there is evidence to the contrary). But, nothing in the evidence to the contrary fixes any failure of duty on Donegan. It is our conclusion that the trial court properly directed a verdict in behalf of Donegan, but improperly absolved Ramsey (Car No. 4) and Perrone (Car No. 3) from liability to Donegan. Upon another trial the court will permit the jury to decide whether Ramsey (Car No. 4) or Perrone (Car No. 3), or both of them, were guilty of causative negligence as respects the property damage and personal-injury claims of Donegan (Car No. 5). Since Donegan's aggregate amount of recovery has been fixed, the court will submit to the jury what proportion, if any, of Donegan's recovery is assessable against Ramsey or Perrone.

■ The question of contribution, if any, as between Tucker, Denney, Perrone, and Ramsey respecting the recovery allowed Donegan shall be determined pursuant to the jury's ultimate fixing of proportionate responsibility as between them.

■ Clearly, Ralph Isaac Wright is entitled to a new trial, for fixing of damages only, on his claim against Tucker. When the jury returned its verdict finding in favor of Wright against Tucker, but fixing recovery at $0.00, counsel for Wright promptly moved the court to require the jury to return to the jury room to correct the verdict. This motion was denied, as was Wright's timely motion for new trial based on the same irregularity. Here Wright did all that could be done to enable the trial court to correct the error. A new trial on damages only will be awarded on

Wright's claim against Tucker. Cf. Stucker v. Bibble, Ky., 442 S.W.2d 578, and cases there discussed.

As to the appeal styled Anita Hardin Donegan v. Paul Edward Denney et al., No. V–119–68, the judgment is reversed with directions to have a jury determine what proportion, if any, of the aggregate recovery already allowed Anita Hardin Donegan shall be borne by Joseph Francis Perrone and Murrell Alvin Ramsey, or either of them, with appropriate adjudication respecting contribution.

As to the appeal styled Thomas Garland Tucker v. Paul Edward Denney et al., No. V–120–68, the judgment is affirmed insofar as it absolves Pepsi Cola of liability.

The judgment is reversed in said appeal to the extent that it was based on directed verdicts in favor of Murrell Alvin Ramsey and Joseph Francis Perrone, but only to the extent of permitting a jury to determine what, if any, proportion of the recovery allowed Anita Hardin Donegan shall be borne by Ramsey and Perrone, or either of them.

In the appeal styled Murrell Alvin Ramsey v. Paul Edward Denney et al., No. V–121–68, the judgment is affirmed insofar as it absolves Pepsi Cola from liability.

In the appeal styled Joseph Francis Perrone v. Paul Edward Denney et al., No. V–122–68, the judgment is reversed so as to permit determination of the claims of Joseph Francis Perrone for contribution against Paul Edward Denney, Murrell Alvin Ramsey, and Thomas Garland Tucker.

In the appeal styled Ralph Isaac Wright et al. v. Anita Hardin Donegan et al., No. V–131–68, the judgment is reversed with directions to grant a new trial on the issue of damages only on the claim of Ralph Isaac Wright against Thomas Garland Tucker. The judgment is reversed in said appeal to the extent that directed verdicts in favor of Joseph Francis Perrone and Murrell Alvin Ramsey were adjudged respecting the claim of Ralph Isaac Wright against them, but it is affirmed to the extent that it denies recovery against Perrone and Ramsey in behalf of Denney.

HILL, C. J., and MILLIKEN, NEIKIRK, PALMORE, and STEINFELD, JJ., concur.

OSBORNE and REED, JJ., concur except as to that portion of the opinion respecting the liability of Pepsi Cola Louisville Bottlers.